J-S83037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HERBERT EARL BROWN | : | |
| | : | |
| Appellant | : | No. 322 EDA 2017 |

Appeal from the Judgment of Sentence August 11, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0006607-2015

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED MARCH 02, 2018**

Appellant, Herbert Earl Brown, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury trial convictions of twenty-four counts of possession of child pornography and one count of criminal use of communication facility, and bench trial conviction of failure to comply with registration requirements.[1]  We affirm the judgment of sentence in part, vacate the court's imposition of sexually violent predator ("SVP") status, and remand with instructions.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  For purposes of disposition, we add the court ordered

---

[1] 18 Pa.C.S.A. §§ 6312(d), 7512(a), and 4915.1(a)(3), respectively.

Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on January 18, 2017, and Appellant timely complained on January 20, 2017.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED BY DENYING [APPELLANT'S] MOTION TO SUPPRESS THE JULY 13, 2015 SEARCH WARRANT OF THE GALAXY PHONE, WHERE THE INFORMATION FROM THE ANONYMOUS TIP CONTAINED WITHIN THE WARRANT FAILED TO ESTABLISH PROBABLE CAUSE FOR [APPELLANT'S] PHONE TO BE SEIZED AND SEARCHED; WAS BASED ON INSUFFICIENT, ANONYMOUS, UNCORROBORATED, AND/OR UNRELIABLE INFORMATION AND SOURCES TO ESTABLISH PROBABLE CAUSE; AND CONTAINED INSUFFICIENT RELIABILITY OF THE ANONYMOUS TIP TO ESTABLISH PROBABLE CAUSE ON THE FACE OF THE WARRANT[?]
>
> WHETHER THE TRIAL COURT ERRED BY DENYING [APPELLANT'S] MOTION TO SUPPRESS THE SEARCH WARRANT OF THE GALAXY PHONE, WHERE THE WARRANT CONTAINED INCORRECT AND WRONG IDENTIFYING INFORMATION REGARDING THE GALAXY PHONE (S4 VS S3), THE WARRANT WAS DEFECTIVE AND OVER BROAD, THE WRONG PHONE WAS SEIZED AND SEARCHED, AND THE WARRANT FAILED TO IDENTIFY THE CORRECT CELL PHONE OF [APPELLANT] BY THE CORRECT SIM CARD AND STORAGE DEVICE[?]
>
> WHETHER DETECTIVE MATTHEW MOLCHAN OF THE QUAKERTOWN BOROUGH POLICE DEPARTMENT EXCEEDED THE SCOPE OF THE JULY 15, 2015 AND AUGUST 31, 2015 WARRANTS BY ACCESSING AND EXTRACTING THE MEDIA FILES AFTER SEIZING THE PHONES, AND WITHOUT OBTAINING A NEW SEARCH WARRANT TO ACCESS OR EXTRACT THE MEDIA FILES, AS UNDER **COMMONWEALTH V. STEM**, 96 A.3D 407 (PA.SUPER. 2014) AND **RILEY V. CALIFORNIA**, [___ U.S. ___, 134 S.CT. 2473, 189 L.ED.2D 430 (2014)?]

- 2 -

WHETHER THE EVIDENCE WAS SUFFICIENT TO ESTABLISH THAT THE STORAGE DEVICE CONTAINING CHILD PORNOGRAPHY ON THE PHONES SEARCHED AND SEIZED PURSUANT TO THE SEARCH WARRANTS BELONGED TO AND/OR WERE USED BY [APPELLANT], CONTAINED IMAGES DOWNLOADED BY [APPELLANT], AND THE IMAGES OR PHONES WERE IN POSSESSION OF [APPELLANT?]

WHETHER THE TRIAL COURT ERRED IN APPLICATION AND IMPOSITION OF THE LIFETIME MANDATORY SENTENCING PROVISION UNDER 42 [PA.C.S.A. §] 9718.2(A)(2), WHERE [APPELLANT] WAS SENTENCED TO [TWENTY-FOUR] (24) LIFE SENTENCES, INCLUDING THREE (3) CONSECUTIVE LIFE SENTENCES, AND WHERE:

   A) THE SENTENCING SCHEME UNDER 42 [PA.C.S.A. §] 9718.2(A)(2) INDICATES A SINGLE TRANSACTION OR OCCURRENCE AS PRIOR OFFENSES IMPLICATING THE MANDATORY, AND REQUIRES ONLY THE IMPOSITION OF ONE MANDATORY SENTENCE;

   B) IMPOSITION OF THE LIFETIME MANDATORY UNDER 42 [PA.C.S.A. §] 9718.2(A)(2) VIOLATES THE CRUEL AND UNUSUAL PUNISHMENT PROVISIONS OF THE PENNSYLVANIA CONSTITUTION AND THE 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION[;]

   C) IMPOSITION OF THE LIFETIME MANDATORY UNDER 42 [PA.C.S.A. §] 9718.2(A)(2) VIOLATES THE PENNSYLVANIA AND UNITED STATES CONSTITUTIONS AS A DISPROPORTIONAL SENTENCE COMPARED TO THE CHILD PORNOGRAPHY OFFENSES CONVICTED[;]

   D) IMPOSITION OF THE LIFETIME MANDATORY UNDER 42 [PA.C.S.A. §] 9718.2(A)(2) VIOLATES THE PENNSYLVANIA AND UNITED STATES CONSTITUTIONS AS IT REQUIRES PROOF BEYOND A REASONABLE DOUBT OF AN ELEMENT OF PRIOR CONVICTIONS WHICH CAN ONLY BE DETERMINED BY A JURY. SPECIFICALLY, 42 [PA.C.S.A. §

9718.2(C)] VIOLATES **ALLEYNE V. UNITED STATES**, [570 U.S. 99, 133 S.CT. 2151, 186 L.ED.2D 314 (2013)][;]

E) IMPOSITION OF THE LIFETIME MANDATORY UNDER 42 [PA.C.S.A. §] 9718.2(A)(2) VIOLATES THE PENNSYLVANIA AND UNITED STATES CONSTITUTIONS AS THE PRIOR CONVICTIONS RELIED UPON ARE TOO REMOTE IN TIME TO BE A FACTOR IN IMPOSING THE MANDATORY[;]

F) THE NOTICE REQUIREMENT OF THE LIFETIME MANDATORY SENTENCE IS UNCONSTITUTIONAL, VAGUE, AND FAILS TO PROVIDE THE PETITIONER SUFFICIENT DUE PROCESS AS REQUIRED BY LAW[.]

(Appellant's Brief at 5-6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasonable opinion of the Honorable Wallace H. Bateman, Jr., we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed March 29, 2017, at 11-27) (finding: **(1-3)** facts contained in affidavit of probable cause were based on information obtained from person known to Appellant, who did not have any convictions for *crimen falsi* and had firsthand knowledge of Appellant's possession of child pornography; reliability of information is bolstered by fact that informant was able to provide Appellant's accurate address, phone number, and cellular provider; further, results of Detective Molchan's investigation corroborated facts contained in affidavit of probable cause; under these circumstances, information contained in affidavit of probable

- 4 -

cause was sufficient, reliable, and corroborated; additionally, description of phone was sufficiently particular because affidavit of probable cause identified exact phone number and brand of phone sought by police; fact that police seized Galaxy S3 instead of Galaxy S4 named in affidavit of probable cause is of no consequence because Commonwealth established that variation between models was minimal; Detective Molchan also called phone number listed in affidavit of probable cause during execution of warrant to ensure seizure of correct cellphone; as such, any defect in affidavit of probable cause was immaterial; Detective Molchan's inclusion of incorrect cellphone model was not deliberate inclusion meant to mislead anyone; even if Detective Molchan had omitted model of cellphone from affidavit of probable cause, sufficient probable cause still existed to support seizure of Appellant's cellphone; finally, Detective Molchan did not exceed scope of search warrants because record demonstrates he seized and searched only items described in warrants; further, Appellant relies on inapplicable case law to support his claim that Detective Molchan exceeded scope of search warrants; therefore, court properly denied Appellant's suppression motion;[2] **(4)** Appellant admitted to police that his cellphone

---

[2] In the trial court, Appellant solely claimed the court should suppress the evidence seized by police because Detective Molchan seized a Galaxy S3 instead of a Galaxy S4. Significantly, Appellant did not raise his claims that: (1) the anonymous tip was unreliable; (2) the police failed to corroborate the information in the affidavit of probable cause; (3) the search warrant

*(Footnote Continued Next Page)*

contained images of underage children and he knew possession of such images at issue was illegal; cellular pings confirmed Appellant's use of cellphone during time period when over forty searches for child pornography occurred on phone; Appellant's claim that he downloaded images from nudist organization's website does not absolve Appellant of liability for possession of child pornography; Appellant verified with police that cellphone seized belonged to him; thus, sufficient evidence existed for jury to convict Appellant of possession of child pornography; **(5)** Appellant has entered *nolo contendere* pleas in four prior cases involving sexual offenses, one in Michigan and three in Pennsylvania; Michigan case constituted Appellant's first strike and Pennsylvania cases constituted Appellant's second strike pursuant to Section 9718.2(a)(2); each of Appellant's current convictions constitute third strike; contrary to Appellant's assertion, language of Section 9718.2(a)(2) requires court to impose mandatory life sentences for each of Appellant's convictions because each image of child pornography is separate offense; as such, court properly imposed twenty-four life sentences; with respect to Appellant's claim that Section 9718.2(a)(2) constitutes cruel and unusual punishment, Pennsylvania courts have repeatedly rejected claims

*(Footnote Continued)* ———————————

was overbroad; or (4) the police exceeded the scope of the warrants by failing to obtain additional warrants to extract information from the devices seized. Thus, these claims are arguably waived on appeal. *See* Pa.R.A.P. 302(a) (stating: "issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal").

that challenge constitutionality of habitual offender statutes; to extent Appellant claims twenty-four life sentences is disproportionate to crime committed, this claim fails because court has no discretion under Section 9718.2(a)(2); additionally, Pennsylvania courts have stated disproportionality claims have no merit when court sentences defendant under habitual offender statute; with respect to Appellant's claim that imposition of mandatory life sentences violated ***Alleyne***, this claim fails because his prior convictions are legally recognized conclusions which do not require additional fact finding; Appellant's ***Alleyne*** argument fails to appreciate that he was found guilty of prior offenses beyond reasonable doubt; additionally, Appellant would be highly prejudiced if Commonwealth was required to present evidence of prior convictions to jury; to extent Appellant argues his prior convictions are too remote in time, Section 9718.2(a)(2) does not cap age of prior convictions eligible for consideration as prior strikes under habitual offender statute;[3] with respect to Appellant's challenge to notice he received of Commonwealth's intent to seek mandatory minimum under Section 9718.2(a)(2), this claim fails because Commonwealth provided Appellant notice of intent to seek mandatory minimum prior to time required by statute; additionally, notice requirements contained in Section 9718.2(c) are constitutional and demonstrate

_____

[3] Appellant abandons the challenge to his sentence based on the remoteness of his prior convictions in his appellate brief.

legislature's intent to satisfy defendant's due process rights; under these circumstances, court properly imposed twenty-four (24) mandatory minimum sentences pursuant to Section 9718.2(a)(2), and Appellant's various challenges to his sentence fail). The record supports the court's sound reasoning.

Finally, we observe the recent PA Supreme Court decision that held the registration requirements under SORNA constitute criminal punishment. **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). In light of **Muniz**, this Court subsequently held: "[U]nder **Apprendi**[4] and **Alleyne**, a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him…likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." **Commonwealth v. Butler**, 173 A.3d 1212, 1217 (Pa.Super. 2017) (internal quotations and citations omitted). The **Butler** Court also held: "Section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." **Id.** at 1218. The **Butler** Court concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings, "until [the]

_____

[4] **Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

- 8 -

General Assembly enacts a constitutional designation mechanism." *Id.*

Instantly, the court imposed SVP status on Appellant on 8/11/16. Appellant filed a post-sentence motion on 8/19/16, which the court denied by operation of law on 1/4/17. Appellant timely filed a notice of appeal on 1/13/17. While Appellant's appeal was pending, our Supreme Court decided *Muniz* on July 19, 2017, that held the registration requirements under SORNA constitute criminal punishment; and this Court decided *Butler* on 10/31/17, which deemed unconstitutional the current mechanism for imposition of SVP status, as used in the present case, and stated trial courts cannot impose SVP status in that manner. *See Muniz, supra*; *Butler, supra*. In light of *Muniz* and *Butler*, Appellant's SVP status constitutes an illegal sentence, which we can review *sua sponte*. *See Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa.Super. 2003) (*en banc*) (restating general rule that we can review illegal sentence *sua sponte*). Therefore, we vacate Appellant's SVP status and remand the case to the trial court to issue a revised notice to Appellant pursuant to 42 Pa.C.S.A. § 9799.23 (governing reporting requirements for sex offenders). Accordingly, we affirm the judgment of sentence in part but vacate the court's imposition of SVP status and remand with instructions.

Judgment of sentence affirmed in part; SVP designation vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/2/18

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-09-CR-0006607-2015
                                :
            v.                  :
                                :
HERBERT BROWN                   :

# OPINION

Defendant Herbert Brown (hereinafter "Appellant"), appeals this Court's ruling on the

suppression of evidence and challenges the legality of the imposed sentence. We file this

Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## PROCEDURAL HISTORY

Prior to the case at bar, in 1994, Appellant pled nolo contendre to Criminal Sexual

Conduct in the Second Degree, in Michigan.[1] See CS-3, CS-4 of 8/11/16. In the year 2000,

Appellant pled nolo contendre to Criminal Solicitation[2], Corruption of Minors[3], and Criminal

Attempt[4].[5] In a subsequent case on the same year, Appellant pled nolo contendre to two counts of

Rape[6], two counts of Statutory Sexual Assault[7], six counts of Aggravated Indecent Assault[8], six

counts of Indecent Assault[9], and two counts of Corruption of Minors[10].[11] Finally, in the year

---

[1] Case #94-004668-FH, The People vs Herbert Brown.
[2] 18 Pa.C.S.A. § 902(a)(2).
[3] 18 Pa.C.S.A. § 6301.
[4] 18 Pa.C.S.A. § 901.
[5] CP-09-CR-0004339-2000.
[6] 18 Pa.C.S.A. § 3121.
[7] 18 Pa.C.S.A. § 3122.
[8] 18 Pa.C.S.A. § 3125(1), (2) & (8).
[9] 18 Pa.C.S.A. § 3126(a)(1), (2) & (8).
[10] 18 Pa.C.S.A. § 6301.
[11] CP-09-CR-0005688-2000.

1

2001, Appellant pled nolo contendre to one count of Criminal Mischief[12] and Corruption of Minors[13].[14]

In the instant case, Appellant was arrested by Quakertown Borough Police Department on August, 27, 2015, on two (2) counts of Failure to Provide Accurate Registration Information[15], two (2) counts of Criminal Use of a Communication Facility[16], and one hundred seventy (170) counts of Child Pornography[17]. This Court bifurcated the criminal information into two trials so as not to prejudice Appellant on the Failure to Provide Accurate Registration Information count. Prior to trial, the Commonwealth amended the criminal information to only one (1) count of Failure to Provide Accurate Registration Information, one (1) count of Criminal Use of a Communication Facility, and eighty-five (85) counts of Child Pornography. Finally, the Commonwealth nolle prossed sixty-one (61) counts of Child Pornography before trial.

During a pre-trial motions hearing, the Appellant argued the July 15, 2015, search warrant was defective and the remainder of the Commonwealth's physical evidence was fruit of that defective warrant.[18] Appellant argued the warrant to seize Appellant's cell phone, was defective in that it identified the seizure of a "Samsung Galaxy S4" but law enforcement seized a "Samsung Galaxy S3."[19] This Court denied Appellant's motion to suppress, ruled the affidavit of probable cause was sufficient to obtain a warrant, and the warrant adequately described the item

---

[12] 18 Pa.C.S.A. § 3304(a)(1).
[13] 18 Pa.C.S.A. § 6301.
[14] CP-09-CR-0000683-2001.
[15] 18 Pa.C.S.A. § 4915.1(a)(3).
[16] 18 Pa.C.S.A. § 7512(a).
[17] 18 Pa.C.S.A. § 6312(d).
[18] Appellant preserved this argument throughout trial.
[19] Photos entered into evidence at the Suppression Hearing showed little difference in comparison of a Samsung Galaxy S3 verses a Samsung Galaxy S4 from both a profile and frontal view. See CS-7 and CS-8 of 3/14/16; N.T. 3/14/16, p. 34-35.

2

to be seized at the address provided. N.T. 3/14/16, pp. 8-11; see generally CS-5 and CS-6 of 3/14/16.

The July 15, 2015, search warrant in question identified the specific item to be seized as: "Galaxy S4, T-Mobile Cellular Phone with phone# 267-221-5851 with a black case, belonging to Herbert Brown of 108 S. Hellertown Ave. Apt H Quakertown, PA. 18951." See CS-6 of 3/14/16; N.T. 3/14/16, pp. 27-28. The warrant identified the items to be searched as

> [c]ellular telephone contents, including but not limited to: the SIM card, internal and external memory and any removable memory storage, voice communications, inbound and outbound calls, text or SMS communications sent and received, contact list information, photographs sent and received, saved and deleted photographs and any communications made through software applications on the cellular telephone.

See CS-6 of 3/14/16; N.T. 3/14/16, pp. 27-28. The affidavit of probable cause for the July 15, 2015, search warrant reads as follows, in pertinent part:

> On Wednesday, July 1, 2015 at 1206 hours a concerned citizen sent an anonymous top to the Pennsylvania State Police, Megan's Law Public Website. The anonymous top was forwarded to the Quakertown Borough Police Department on Monday, July 5, 2015 at 0930 hours. The tip was sent via email from a concerned citizen in reference to Herbert Brown who is an active, Tier 3 sexual offender who had child pornography on his phone. The concerned citizen wishes to remain anonymous and has no crimen falsi convictions.
>
> The concerned citizen citizen [sic] is known to Herbert Brown and was able to access Brown's cell phone, Galaxy S4 T-Mobile phone, cell phone #267-221-5851 during the week of June, [sic] 21, 2015. The concerned citizen was able to look in Brown's phone and while looking in the phone saw five photographs of little naked girls. The pictures on Brown's phone were of frontal nudity of pre-pubescent juvenile females with an approximate age of ten years old. The photographs depicted different naked girls who were standing.
>
> Your affiant verified through Acurint that cell number 267-221-5851 belonged to Herbert Brown. The phone company registered to the phone was verified to be T-Mobile USA.
>
> Based on my training, experience and knowledge, your affiant is aware that cell phones can be utilized by persons to engage in criminal activity . . . Persons who use cellular telephones tend to retain their personal files and data for extended

3

periods of time even if a person has replaced, traded in or "upgraded" to a new cellular telephone. Your affiant knows cellular telephone users routinely transfer most of their data onto their new cellular telephone when making an upgrade . . . Wherefore, your Affiant believes that probable cause exists to believe that violations of Title 18, specifically relating to Sexual Abuse Of Children (Child Pornography), as well as Criminal Use of a Communication Facility, were committed and information and evidence associated with those crimes is present in the Galaxy S4 cellular telephone.

See CS-6 of 3/14/16; N.T. 3/14/16, pp. 27-28. The description of what the Detective seized reads: "Samsung Galaxy S III, white – cell # 267 221-5851." See CS-6 of 3/14/16; N.T. 3/14/16, pp. 27-28. Based on the record and evidence presented at the Suppression Hearing, this Court found the following:

1. Det. Molchan was a credible witness. N.T. 3/15/16, p. 11.

2. Pennsylvania State Police received three tips about the Appellant through the Megan's Law Hotline. N.T. 3/15/16, p. 4.

3. One of the tipsters was known to Appellant and possessed firsthand knowledge of the child pornography on Appellant's phone after viewing the images herself. N.T. 3/15/16, p. 4.

4. The tipster with firsthand knowledge of cellular telephone's (hereinafter "cell phone") contents had no crimen falsi convictions. N.T. 3/15/16, p. 5.

5. The phone to be seized was described as a Galaxy S4 T-Mobile cellular telephone phone with a phone number of (267) 221-5851. N.T. 3/15/16, p. 5.

6. Det. Molchan confirmed the number (267) 221-5851 belonged to Appellant and the phone company registered to the phone was verified as T-Mobile. N.T. 3/15/16, p. 5.

7. The item seized was a Galaxy S3 cellular telephone registered with T-Mobile, and the same phone number as listed on the warrant: (267) 221-5851. N.T. 3/15/16, p. 6.

8. The physical difference between a Galaxy S3 verses a Galaxy S4 is not readily apparent. N.T. 3/15/16, p. 7.

9. This Court found that the affidavit of probable cause was adequate, the seizure of the Appellant's phone was lawful, and the resulting evidence obtained from the phone was admissible at trial. N.T. 3/15/16, p. 8. This Court further held that if an error did occur as to the seizure of a Galaxy S3 verses S4, "the error was minimal and was based upon information the police officer had after a reasonable investigation and that he reasonably believed it to be accurate." Therefore, whether a de minimis error existed or not, the Court's admissibility ruling remained the same. N.T. 3/15/16, p. 8.

One month later, law enforcement sought another warrant. The application for search warrant and authorization for August 15, 2015, was for Appellant's new phone. See CS-9 of 3/14/16. The application described Appellant's new phone as "HTC Cellular Phone with phone# 267-221-5851 with a black case (audi [sic] Logo), belonging to Herbert Brown of 108 S. Hellertown Ave. Apt H Quakertown PA. [sic] 18951." See CS-9 of 3/14/16. The evidence seized was admitted.

The third search warrant in this case was for Appellant's lap top. The application for search warrant and authorization for August 31, 2015, identified the items to be searched for and seized as "[t]he hard drive, and any other non-removable and removable storage of a laptop computer unit for child pornography material or related obscene material to include, but not limited to files, phots, videos and or computer directories, depicting a child under the age of 18 engaged in sexual acts." See CS-10 of 3/14/16. The evidence seized was admitted.

After a trial beginning on April 11, 2016, the jury found Appellant guilty of Criminal Use of a Communication Facility and twenty-four (24) counts of child pornography. N.T. 4/13/16,

5

pp. 103-07. The subsequent bench trial on July 19, 2016, resulted in another conviction for Failure to Provide Accurate Registration Information. N.T. 7/19/16, p. 19. In the interim of conviction and sentence, Appellant was deemed a sexually violent predator. N.T. 8/11/16, p. 3.

The Court sentenced Appellant to serve not less than ten (10) years, nor more than twenty (20) years, confinement in a State Correctional Institution on Count one (1), Failure to Provide Accurate Registration Information. N.T. 8/11/16, pp. 63-64. As a three strike offender[20], Appellant was sentenced to three (3) consecutive life sentences and twenty-one (21) concurrent life sentences: two (2) consecutive life sentences for Counts two (2) and three (3), Child Pornography, to be served concurrently with Count one (1); the remaining twenty-two (22) Child Pornography counts earned Appellant twenty-two (22) life sentences served concurrently with each other but consecutive to the sentence imposed on Count three (3). N.T. 8/11/16, p. 64. Appellant received no penalty on Count eighty-seven (87), Criminal Use of a Communication Facility. N.T. 8/11/16, pp. 64-65.

Following this Court's imposition of sentence, Appellant filed a timely Motion for Reconsideration of Sentence on August 19, 2016. This Court held a hearing on Appellant's post-trial motions on October 27, 2016. This Court placed Appellant's post-trial motions under advisement until January 4, 2017, whereupon this Court entered an Order dismissing Appellant's motions.[21] Appellant filed a timely Notice of Appeal to the Superior Court on January 13, 2017.

## FACTUAL BACKGROUND

---

[20] Strike one: Appellant pled nolo contendre on a Michigan case, # 94-004668-FH, The People vs Herbert Brown; strike two: Appellant pled nolo contendre in CP-09-CR-0005688-2000, CP-09-CR-0000683-2001, and CP-09-CR-0004339-2001. Infra Section III.

[21] Appellant was ordered to produce a brief presenting his argument within twenty (20) days of this hearing, and the Commonwealth would have ten (10) days thereafter to file a brief in opposition – as of the date of this Order, Appellant's Counsel had not filed a brief. See Bucks County Criminal Court Sheet, October 28, 2016.

6

Appellant kept illicit sexual images of underage children on his cell phone. N.T. 4/12/16, pp. 10-11; N.T. 4/11/16, p. 115. Appellant argued someone else must have downloaded and searched the illicit images on his phone. N.T. 4/12/16, pp. 134-35.[22] Contrary to Appellant's claim, testimony revealed Appellant habitually kept his phone nearby and under his exclusive control. N.T. 4/11/16, pp. 126-28, 173-74.

Appellant worked at Total Molding Services when Appellant's work supervisor, Robert Rambo, saw pictures on Appellant's phone of girls estimated to be between ten (10) to twelve (12) years old, in sexual positions and with limited to no clothing on. N.T. 4/12/16, pp. 9-11; N.T. 4/13/16, pp. 125-26. Mr. Rambo witnessed Appellant using Facebook on his phone. N.T. 4/12/16, p. 11. After Mr. Rambo discovered Appellant viewing these illicit photos, Mr. Rambo informed his manager, and together they called law enforcement. N.T. 4/12/16, p. 11.

Appellant used the social media company, Facebook, to contact a former victim whom he raped while she was a pre-teen. N.T. 4/12/16, p. 28; N.T. 3/15/16, p. 11. Appellant tattooed her name on his arm when the victim was eleven (11) years old. N.T. 4/12/16, p. 29. Appellant messaged the victim, provided his cell phone number to the victim, and copied photos of the victim onto his Facebook account. N.T. 4/12/16, pp. 30-31.

Kim Levenick, Appellant's live-in-girlfriend, contacted Quakertown Borough Police Department to report the child pornography she discovered on Appellant's cell phone. N.T. 4/11/16, pp. 123, 126, 130; N.T. 4/12/16, p. 35. Ms. Levenick described the children as ten (10) to twelve (12) year-old girls. N.T. 4/11/16, p. 130. Ms. Levenick provided Appellant's cell phone number, (267) 221-5851. N.T. 4/12/16, pp. 35, 134. Appellant provided the same cell phone

---

[22] Since Appellant testified, his crimen falsi convictions were admissible for the jury to consider with regard to Appellant's truthfulness while on the stand. Appellant' convictions include: CP-09-CR-0002328-2012 for forgery, theft by unlawful taking, theft by deception and receiving stolen property; and CP-09-CR-0001684-2015 for fraud and obtaining food stamps for assistance.

7

number to his past victim via Facebook. N.T. 4/16/16, p. 30. Ms. Levenick told law enforcement that Appellant's phone was a Samsung Galaxy S3. N.T. 4/12/16, p. 35. Ms. Levenick wanted to remain an anonymous tipster in fear of Appellant's retaliation. N.T. 4/11/16, p. 132; N.T. 4/12/16, p. 35.

Detective Molchan of the Quakertown Borough Police Department received Ms. Levenick's tip. Det. Molchan verified the tip to confirm whether the phone number provided was registered to Appellant and at Appellant's address as provided by the tipster. N.T. 4/12/16, p. 36. After corroborating the tip, Det. Molchan obtained a warrant for Appellant's cell phone largely on the basis of Ms. Levenick's information. N.T. 4/12/16, p. 36. Det. Molchan executed the search warrant while Appellant was present and at his home on July 13, 2015. N.T. 4/11/16, p. 134.

Appellant took Ms. Levenick's phone, against her will, misrepresented Ms. Levenick's phone as his own. N.T. 4/11/16, pp. 134-36; N.T. 4/12/16, p. 43. Appellant abandoned his ruse and retrieved his phone only after Det. Molchan stated he was going to call Appellant's phone. N.T. 4/12/16, pp. 44-45. Det. Molchan collected the phone with the same number as provided in the tip and the warrant. N.T. 4/12/16, pp. 45-46. Appellant admitted to Det. Molchan that the phone seized was Appellant's. N.T. 4/12/16, p. 46. Ms. Levenick also confirmed that the seized phone belonged to Appellant and was the same device she discovered child pornography on. N.T. 4/12/16, p. 46.

Hours later, the Quakertown Borough Police Department dispatched Officer Hawk to Appellant's home because Appellant attempted to overdose on 5 milligrams Percocet and other medications. N.T. 4/12/16, pp. 101, 167-68. Appellant told the officer on scene that he was upset over the seizure of his cell phone earlier in the day. N.T. 4/12/16, p. 102. Appellant admitted to

8

having pictures of naked children on his phone. N.T. 4/12/16, p. 103. Appellant admitted the photos were illegal. N.T. 4/12/16, p. 103. Appellant explained he possessed the photos as part of a scheme to earn $200 if he provided the images to an incarcerated individual. N.T. 4/12/16, p. 103. Appellant did not provide the alleged recipient's name. N.T. 4/12/16, p. 103.

Det. Molchan reviewed the contents of Appellant's seized phone and discovered over 100 images of children in inappropriate positions. N.T. 4/12/16, pp. 49-50. Some photographs depicted entirely nude children confirmed to be as young as eight years old. N.T. 4/12/16, pp. 49-50, 114. Some of the images on the seized phone depicted children involved in sexual acts. N.T. 4/12/16, p. 114. The data dump of the seized phone showed the phone's operator searched for child pornography online. N.T. 4/12/16, pp. 75-78.[23]

On July 13, 2015, Appellant worked at Koller Concrete located at 900 Marshall Street in Bethlehem, Pennsylvania, from 6:13 a.m. to 3:10 p.m. along with his cell phone. N.T. 4/12/16, pp. 66-72. The closest cell tower, located in Pembroke, pinged Appellant's cell phone from 1,440 feet away. N.T. 4/12/16, p. 68-69. While at work that day, a call was placed to Appellant's girlfriend from Appellant's cell phone. N.T. 4/12/16, p. 73. Between the hours of 10:24 a.m. and 11:37 a.m., more than forty (40) searches for child pornography were made on Appellant's phone. N.T. 4/12/16, pp. 74-78.

Appellant was arrested on August 27, 2015. After his arrest, Appellant told Det. Molchan that the search warrant was for a Samsung Galaxy S4 not a Samsung Galaxy S3, as was seized. N.T. 4/12/16, pp. 98-99.[24] Appellant also attempted to justify the images on his phone as part of a nudist organization that he participated in. N.T. 4/12/16, pp. 149, 175.

---

[23] To avoid belaboring the point, only a few examples of the fifty child pornography searches discussed at trial are as follows: "biggest taboo small raped teens," "the hottest naked teen X babes dump," and "little girls horney."
[24] Appellant claims he noticed the misidentification in the warrant on the day of execution but he did not make law enforcement aware of the issue until his arrest forty-five (45) days later.

After law enforcement seized Appellant's phone, he purchased a new phone and continued to use it for child pornography. N.T. 4/11/16, p. 137; N.T. 4/12/16, p. 84. Det. Molchan secured another search warrant for the new phone, which had the same number as the previous phone. N.T. 4/12/16, pp. 83, 171.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On January 18, 2016, this Court issued an Order pursuant to Pa.R.A.P. §1925(b) requiring Appellant to file a Concise Statement of Errors Complained of on Appeal no later than twenty-one (21) days after entry of the Order. Appellant filed such a Statement on January 20, 2016, which raised the following issues, *verbatim*:

1. Whether the trail court erred by denying the Defendant's Motion to Suppress the July 13, 2015 [sic] search warrant of the Galaxy phone, where the information from the anonymous tip contained within the warrant failed to establish probable cause for the Defendant's phone to be seized and searched; was based on insufficient, anonymous, uncorroborated, and/or unreliable information and sources to establish probable cause; and contained insufficient reliability of the anonymous tip to establish probable cause on the face of the warrant.

2. Whether the trial court erred by denying the Defendant's Motion to Suppress the search warrant of the Galaxy phone, where the warrant contained incorrect and wrong identifying information regarding the Galaxy phone (S4 vs S3), the warrant was defective and over broad, the wrong phone was seized and searched, and the warrant failed to identify the correct cell phone of the Defendant by the correct SIM card and storage device.

3. Whether Detective Matthew Molchan of the Quakertown Borough Police Department exceeded the scope of the July 15, 2015 and August 31, 2015 warrants by accessing and extracting the media files after seizing the phones, and without obtaining a new search warrant to access or extract the media files, as under Commonwealth v. Stem, 96 A.3d 407 (Pa. Super. 2014) and Riley v. California.

4. Whether the evidence was sufficient to establish that the storage device containing child pornography on the phones searched and seized pursuant to the search warrants belonged to and/or were used by Defendant, contained images downloaded by the Defendant, and the images or phones were in possession of the Defendant.

5. Whether the trial court erred in the application and imposition of the Lifetime Mandatory sentencing provision under 42 PaCSA 9718.2(a)(2), where the Defendant was sentenced

to twenty five (25) Life sentences, including Three (3) consecutive Life Sentences, and where:

a) The sentencing scheme under 42 PaCSA 9718.2(a)(2) indicates a single transaction or occurrence as prior offenses implicating the mandatory, and requires only the imposition of ONE mandatory sentence;

b) Imposition of the lifetime mandatory under 42 PaCSA 9718.2(a)(2) violates the Cruel and Unusual punishment provisions of the Pennsylvania Constitution and the 8th amendment of the United States Constitution.

c) Imposition of the lifetime mandatory under 42 PaCSA 9718.2(a)(2) violates the Pennsylvania and United States Constitutions as a disproportional sentence compared to the child pornography offenses convicted.

d) Imposition of the lifetime mandatory under 42 PaCSA 9718.2(a)(2) violates the Pennsylvania and United States Constitutions as it requires proof beyond a reasonable doubt of an element of prior convictions which can only be determined by a jury. Specifically, 42 PaCSA 9718.2(a)(2) violates <u>Alleyne vs United States</u>.

e) Imposition of the lifetime mandatory under 42 PaCSA 9718.2(a)(2) violates the Pennsylvania and United States Constitutions as the prior convictions relied upon are too remote in time to be a factor in imposing the mandatory.

f) The Notice requirement of the lifetime mandatory sentence is unconstitutional, vague, and fails to provide the Petitioner sufficient due process as required by law;

## ANALYSIS

Disposing of any procedural issue, Appellant has complied with Pa.R.C.P.

720(A)(2)(a).[25]

## I. The Search Warrants were Supported by an Adequate Finding of Probable Cause, they were Properly Executed, and Adequately Described the Items to be Seized.

The Pennsylvania Supreme Court's standard of review for reviewing a challenge to a trial

court's denial of a suppression motion is well-settled as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are

---

[25] This Court took Appellant's timely post-trial motions under advisement until January 4, 2017, whereupon this Court entered an Order dismissing Appellant's motions. Appellant filed a Notice of Appeal to the Superior Court on January 13, 2017. This filing is within the thirty (30) days allotted under Rule 720(A)(2)(a).

11

bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Bomar, 826 A.2d 831, 842 (Pa. 2003) (citations omitted). Therefore, appellate review of a suppression order "is limited to determining whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error." Commonwealth v. Wiley, 858 A.2d 1191, 1193 (Pa. Super. 2004).

To secure a valid search warrant under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, the affiant must provide a magistrate with enough information to persuade a reasonable person that probable cause exists to execute a search. Commonwealth v. D'Angelo, 263 A.2d 441, 444 (Pa. 1970).

### a. Law Enforcement Demonstrated Sufficient Probable Cause on the July 15, 2015, Search Warrant

The courts must view affidavits of probable cause through a common sense and nontechnical lens. Pa.R.Crim.P. 205; Commonwealth v. Council, 421 A.2d 623, 627–628 (Pa. 1980) (citing United States v. Ventresca, 380 U.S. 102, 108 (1965); Commonwealth v. Murphy, 795 A.2d 997, 1006 (Pa. Super. 2002) (citing Commonwealth v. Clark, 602 A.2d 1323, 1325 (Pa. Super. 1992) (plurality)). The totality of the circumstances test determines whether probable cause exists for a search warrant. Commonwealth v. Grey, 503 A.2d 921 (Pa. 1985) (adopting the test set forth in Illinois v. Gates, 462 U.S. 213 (1983)).

Appellant argues the tip was not reliable and the information in the affidavit did not establish probable cause. Appellant claims the warrant was based on "insufficient, anonymous, uncorroborated, and/or unreliable information and sources. This Court disagrees with Appellant's assertion. As we note from the suppression hearing, the facts presented and corroborated by Det. Molchan thoroughly establish probable cause.

12

The affidavit of probable cause cites a strong source for the information – a person known to the Appellant, with firsthand knowledge of Appellant's child pornography, and no convictions for crimen falsi. The reliability of the tip is bolstered by the fact that the tipster could accurately provide the address, telephone number, and cellular provider of Appellant. Furthermore, all of the identifying information reported by the tipster was corroborated through Det. Molchan's own investigation.

To suggest that the tipster was anonymous and uncorroborated is incorrect – though their name was not mentioned in the affidavit of probable cause, the pertinent facts about the tipster are mentioned – he or she knew the Appellant, identification information about Appellant was corroborated after Det. Molchan's investigation, and he or she had no conviction for crimen falsi. The instant case differs from that of an entirely anonymous tipster in which law enforcement cannot corroborate the tipster's information or weigh their credibility.

The factual determinations made by this Court, when viewed in the totality of the circumstances, led to the conclusion that a reasonable person would be convinced probable cause existed to seize Appellant cell phone. The record as a whole supports this legal conclusion.

### b. The July 15, 2015, Warrant Described the Items to be Seized with Sufficient Particularity

Similar to a finding of probable cause, a "practical, common sense" approach should be taken in determining whether the place to be searched is specified with sufficient particularity. Commonwealth v. Carlisle, 534 A.2d 469, 472 (Pa. 1987). See Commonwealth v. Irvin, 134 A.3d 67, 74-75 (Pa. Super. 2016) (holding, *inter alia*, an incorrect name and date of a trash pull on an affidavit of probable cause does not offend the finding of probable cause nor the particularity requirement).

13

Aside from the incontrovertibly reliable tip, the description of the phone to be seized was especially specific in that it identified the exact telephone number and type of the phone. Although the actual phone seized was a different version, the variation between the look of an S3 verses an S4 is minimal so as to understandably render them indistinguishable. In addition, Det. Molchan called the number in the search warrant to verify he seized the correct phone.

As a practical, common sense matter, Appellant's suggestion that four correct identifying features (Samsung Galaxy, T-Mobile provider, registered to Appellant at Appellant's address, correct phone number) of a cell phone make a warrant "defective and over broad" is irrational. Common sense dictates the facts set forth in the affidavit were specific enough to identify the correct item to be seized. Common sense also suggests that since law enforcement seized the phone they sought in the search warrant in a concentrated search, the description of the device was sufficiently particular. The record as a whole supports this Court's finding.

### c. Any Mistake by Law Enforcement was Immaterial to the Probable Cause Determination

Though federal jurisprudence provides a good faith exception to the exclusionary rule, Commonwealth v. Edmunds, 586 A.2d 887 (Pa. 1991) declined to adopt that exception. However, Pennsylvania does allow for good faith immaterial defects in a warrant without triggering the exclusionary rule. Commonwealth v. Baker, 24 A.3d 1006 (Pa. Super. 2011) (aff'd by 78 A.3d 1044); see e.g. Commonwealth v. Scavincky, 359 A.2d 449, 452 (Pa. Super. 1976); see also Commonwealth v. Murphy, 795 A.2d 997, 1006 (Pa. Super. 2002) (citing Commonwealth v. Clark, 602 A.2d 1323, 1325 (Pa. Super. 1992)). If a search warrant is based on an affidavit which contains a knowingly misleading material fact, the search warrant is invalid. D'Angelo, 263 A.2d at 441; Clark, 602 A.2d at 1325 ([i]f a search warrant is based on an affidavit containing deliberate or knowing misstatements of material fact, the search warrant is

14

invalid."). "A material fact is one without which probable cause to search would not exist." Baker, 24 A.3d at 1018 (Pa. Super. 2011) (quoting Commonwealth v. Zimmerman, 422 A.2d 1119, 1124 (Pa. Super. 1980). The lower court determines the deliberateness of a misstatement in a search warrant. Commonwealth v. Williams, 345 A.2d 267, 270 (Pa. Super. 1975).

The July 15, 2015, search warrant was not defective due to any minor inaccuracies in the affidavit of probable cause for two reasons: the version of the Samsung Galaxy was not a material fact; and the inaccuracy in the search warrant was not a knowingly misleading inclusion. Whether Appellant's phone was an S3 or S4, does not negate probable cause, therefore as the Baker court noted, that is not a material fact. The inaccuracy was not known to Det. Molchan and by logical extension could not be deliberate – the description of the phone came from the tipster.

If the affidavit of probable cause omitted the type of Samsung Galaxy sought, probable cause would still exist. The search warrant adequately identified Appellant's phone and the language used in the affidavit of probable cause was sufficient to result in the seizure of Appellant's phone. Though the tipster gave an incorrect version of the Samsung Galaxy, which was the only inaccurate identifying feature she reported, she proved her credibility and reliability in providing several other accurate identifying features. The record as a whole supports this conclusion.

**d. Det. Molchan did not Exceed the Scope of Either Search Warrant**

Appellant also contends the Det. Molchan exceeded the scope of the July 15, 2015, and August 31, 2015, warrants. Regarding the July 15, 2015, search warrant, Det. Molchan did not exceed the scope of the warrant as it states the items seized on the face of it: "the SIM card, internal and external memory and any removable memory storage . . . photographs sent and

15

received, saved and deleted photographs . . ." Regarding the August 31, 2015, warrant, the face of the warrant states the Commonwealth is seeking images of child pornography on Appellant's computer and that's exactly what they extracted. The record as a whole supports this Court's conclusion.

Appellant supports his proposition with Commonwealth v. Stem, 94 A.3d 407 (Pa. Super. 2014) and Riley v. California, 134 S.Ct. 2473 (2014). Both of those cases are distinct as a matter of law and fact from the instant case. Stem and Riley concern a warrantless search that assumed authority to search incident to arrest. See Riley, 134 S.Ct. at 2482-83; see also Stem, 94 A.3d at 410-11. In Stem and Riley, the courts took issue with the warrantless search of a cell phone because the two purposes allowing search incident to arrest espoused in Chimmel v. California, 395 U.S. 752 (1969) are not present with regard to cell phones – safety and preservation of evidence. These cases are off base in that Appellant's phone and computer images were accessed via lawful search warrants.

## II. Sufficient Evidence was Available at Trial to Prove Appellant Acquired the Child Pornography on Devices Owned and Possessed by Appellant.

The Pennsylvania Supreme Court clearly articulates the standard of review judging the sufficiency of the evidence at the trial level: "[after] viewing the evidence in a light most favorable to the Commonwealth as the verdict winner and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all the elements of the crime were established beyond a reasonable doubt." Commonwealth v. Williams, 650 A.2d 420, 424 (Pa. 1994); Commonwealth v. Hagan, 654 A.2d 541, 543 (Pa. 1995); see Commonwealth v. Heberling, 678 A.2d 794, 795 (Pa. Super. 1996).

Section 6312(d), which Appellant was convicted of violating, provides in relevant part:

16

> Any person who *knowingly possesses or controls* any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S.A. § 6312(d)(1) (emphasis added). Accessing and viewing child pornography over the internet constitutes "control" of the pornography under 18 Pa.C.S.A. § 6312(d). Commonwealth v. Diodoro, 970 A.2d 1100, 1108 (Pa. 2009). A single intentional search, intentional viewing, or the mere knowledge that child pornography exists on one's hard drive, is sufficient to demonstrate knowing control or possession of child pornography under 18 Pa.C.S.A. 6312(d). Diodoro, 970 A.2d at 1106-07.

Appellant claims the evidence presented at trial was insufficient to prove that he was the person who downloaded or searched for child pornography each time a new picture or search was found on his cell phone. Appellant's claim stands contrary to the facts and his own admissions.

Appellant admits to Officer Hawk that the pictures on his phone were of underage children and that he knew the images were illegal. N.T. 4/12/16, p. 103. For an hour long period on July 13, 2015, Appellant's time card puts him at work, a nearby cell tower pings his phone in the same area, and the phone is used to call Appellant's girlfriend. N.T. 4/12/16, pp. 66-73. This is enough to infer Appellant was using his cellphone during the same period, during which, over forty (40) searches for child pornography occurred on Appellant's phone. N.T. 4/12/16, pp. 74-78. Appellant also tries to explain away the images on his phone as images from a nudist organization he belonged to – a claim that, even if it were true, does not absolve Appellant of liability for child pornography. N.T. 4/12/16, pp. 149, 175.

Furthermore, the Supreme Court of Pennsylvania recognizes that the mere knowledge of child pornography on a hard drive satisfies 18 Pa.C.S.A. 6312(d) – the child pornography statute

17

Appellant was found guilty of violating twenty-four (24) times. Diodoro, 970 A.2d at 1106-07. Appellant does not challenge whether he knew of the images on his phone, just that he did not actively seek them out. Therefore, in consideration of the precedent set in Diodoro, Appellant should have been and was properly convicted of violating 18 Pa.C.S.A. § 6312(d).

Appellant also seems to challenge whether Appellant was in possession of the phone that contained child pornography. Again, this claim directly contradicts the evidence. Appellant retrieved the phone himself and represented that phone as his. N.T. 4/12/16, p. 46. Appellant admitted to Officer Hawk that the phone seized by Detective Molchan was his. N.T. 4/12/16, p. 102. The telephone number for the seized phone matched the phone number that was registered to Appellant. N.T. 4/12/16, pp. 45-46. Appellant gave the same phone number out for others to contact him. N.T. 4/16/16, p. 30. Appellant was observed using the same phone at home. N.T. 4/11/16, pp. 125, 127-29.

The evidence proving Appellant's possession, use, and acquisition of child pornography was overwhelming and when viewed in a light most favorable to the Commonwealth. The trier of fact correctly found that all the elements of the crime were present. The jury is free to believe all, part, or none of the testimony at trial. Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citing Commonwealth v. Griscavage, 517 A.2d 1256 (Pa. 1986)).
Clearly, the jury rejected Appellant's excuses or version of events and it is well settled that the Court cannot substitute its judgment for that of the trier of fact. Commonwealth v. Holley, 945 A.2d 241, 246 (Pa. Super. 2008).h

III. **Appellant's Sentence is Legal and Mandated Under 42 Pa.C.S.A. 9718.2(a)(2)**

Appellant had pled nolo contendre to four prior cases involving sex offenses under 42 Pa.C.S.A. § 9799.14: one in Michigan, and three in Pennsylvania. The Michigan case charged

18

Appellant with a sex crime equivalent under 42 Pa.C.S.A. § 9718.2(a)(2). This was Appellant's first strike. The subsequent Pennsylvania cases counted as Appellant's second strike. In CP-09-CR-0004339-2000, Appellant pled to, *inter alia*, 18 Pa.C.S. § 6301 corruption of minors[26]. In CP-09-CR-0005688-2000, Appellant pled to 18 Pa.C.S. § 3121 rape[27], 18 Pa.C.S. § 3122.1(b) statutory sexual assault[28], 18 Pa.C.S. § 3125 aggravated indecent assault[29], 18 Pa.C.S. § 3126(a)(1) & (2) indecent assault[30], and 18 Pa.C.S. § 6301 corruption of minors[31]. Finally, in CP-09-0000683-2001, Appellant pled to, *inter alia*, 18 Pa.C.S. § 6301 corruption of minors[32], and Pa.C.S. § 6312(d)[33].

### a. The Habitual Offender Statute Requires the Imposition of a Life Sentence for each Conviction

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The plain language of the statute is generally the best indicator of such intent. <u>Commonwealth v. Daniels</u>, 963 A.2d 409, 417 (Pa. 2009). The rules of grammar and common usage are acceptable to discern the meaning of the plain language of the statute. 1 Pa.C.S.A. § 1903 (a); <u>Day v. Civil Serv. Comm'n of Borough of Carlisle</u>, 931 A.2d 646, 652 (Pa. 2007). We presume that the General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable" when enacting legislation. 1 Pa.C.S.A. § 1922(1); <u>HSP Gaming, L.P. v. City of Philadelphia</u>, 954 A.2d 1156, 1172 (Pa. 2008). The General Assembly favors the public interest against any private interest. 1 Pa.C.S.A. § 1922. We will only look beyond the plain meaning of the statute where the words of the statute

---

[26] Tier I sexual offense under 42 Pa.C.S. § 9799.14(b)(8).
[27] Tier III sexual offense under 42 Pa.C.S. § 9799.14(d)(2).
[28] Tier III sexual offense under 42 Pa.C.S. § 9799.14(d)(3).
[29] Tier III sexual offense under 42 Pa.C.S. § 9799.14(d)(7).
[30] Tier I sexual offenses under 42 Pa.C.S. § 9799.14(b)(6); Tier II sexual offense under 42 Pa.C.S. § 9799.14(c)(1.3).
[31] Tier I sexual offense under 42 Pa.C.S. § 9799.14(b)(8).
[32] Tier I sexual offense under 42 Pa.C.S. § 9799.14(b)(8).
[33] Tier I sexual offense under 42 Pa.C.S. § 9799.14(b)(9).

19

are unclear or ambiguous. 1 Pa.C.S.A. § 1921(c); Upper Southampton Twp. v. Upper Southampton Twp. Zoning Hearing Bd., 934 A.2d 1162, 1167 (Pa. 2007).

42 Pa.C.S.A. § 9718.2(a)(2) states:

Where the person had at the time of the commission of the current offense previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9799.14 . . . the person *shall* be sentenced to a term of life imprisonment, notwithstanding any other provision of this title or other statue to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required.

(emphasis added).

Appellant contends that the language of this statute (hereinafter "habitual offender statute") requires the imposition of only one life sentence. A plain reading of the statutory language mandates that the court sentence a third-time sex offense under Section 9799.14 to a life sentence for each "third strike." N.T. 10/27/16, pp. 4-5. Under Appellant's understanding, he should be sentenced to life but only on one of the twenty-four (24) child pornography counts. However, the Court contends that the statutory language requires a life sentence for each offence, beyond two, that arises from separate criminal conduct.

Commonwealth v. Davidson, 938 A.2d 198, 218 (Pa. 2007) made it clear that each image of child pornography is a single offense that does not merge with an additional child pornography charge – each image is a separate offense. The statute makes it clear that the General Assembly intended for Section 6312(d) to punish an individual on each pornographic image as a discrete and separate criminal act under Section 6312(d). Davidson, 938 A.2d at 218-19. "There is nothing in this Court's merger case law which supports the contention that only one sentence [for child pornography under Section 6312(d)] may be imposed for multiple criminal acts which result in multiple convictions." Davidson, 938 A.2d at 218.

20

Davidson treats each image of child pornography as a single offense. Logically, it makes sense to treat each image this way as each picture has a different victim and takes a separate act from the defendant. Turning to the statute, "two *or more*" prior offenses require the imposition of a life sentence. The "or more" language suggests that a life sentence for each subsequent offense, beyond two, viewed individually, is required under the statute. Appellant is a two strike offender and each image is a third strike, therefore a life sentence must be imposed on each count. The choice to run each sentence concurrently or consecutively is at the discretion of the sentencing judge. This interpretation is consistent with the Pennsylvania Supreme Court's reading of habitual offender statutes. See Commonwealth v. Fields, 107 A.3d 738, 744 (Pa. 2014) (holding 42 Pa.C.S.A. § 9714(a)(1), the habitual violent offender habitual offender statute sharing the same sentencing language as 9718.2(a)(2), requires the court to sentence a second-strike offender to the statutory minimum on each conviction for a violent crime within the second strike).

### b. The Habitual Offender Statute does not Violate the United States and Pennsylvania Constitutions' Prohibition Against Cruel and Unusual Punishment

Appellant also argues the three strike law offends his right against cruel and unusual punishment under the Pennsylvania Constitution and the Eighth Amendment of the United States Constitution. This claim has been addressed time and again in both the Pennsylvania and federal courts yet the outcome remains the same – habitual offender statutes are constitutional. Baker, 78 A.3d 1044 (Pa. 2013); see Commonwealth v. Parker, 718 A.2d 1266, 1268 (Pa. Super. 1998) (citing Parke v. Raley, 506 U.S. 20, 27 (1992)); see also Commonwealth v. Barnett, 50 A.3d 176 (Pa. Super. 2012) (appeal denied). There is nothing cruel or unusual about giving a person three separate chances to rehabilitate and lead a life free of sex crimes, before permanently removing the offender from free society, when he proves an inability to resist sexual impulses and comply with the law.

21

### c. The Proportionality of Appellant's Sentence is of No Consequence

Appellant contends the disproportional nature of sentencing him to life as compared to a standalone sentence for child pornography violates the Pennsylvania and United States Constitutions. This Court has no discretion to sentence under the statute and disproportionality is not claim of merit under a habitual offender statute. Baker, 78 A.3d 1044 (Pa. 2013); see Parker, 718 A.2d at 1268 (rejecting appellant's argument that proportionality is constitutionally significant in sentencing habitual offenders) (citing Parke, 506 U.S. at 27); see also Barnett, 50 A.3d 176 (Pa. Super. 2012) (appeal denied) (holding no inference of gross disproportionality existed for a second strike of unlawful contact with a minor, indecent assault, and corruption of minors, given the history and age of the defendant).

### d. Alleyne does not Require a Jury to Find Appellant Pled or was Convicted of Two Prior Crimes under Section 9799.14.

Finally, Appellant argues the imposition of a life sentence violates Alleyne because the jury did not determine if Appellant committed two or more separate criminal offenses under Section 9799.14, which resulted in a mandatory life sentence. Entertaining Appellant's claim for a moment – he suggests the court should inform the jury of two prior convictions for sex crimes. Aside from the obvious prejudice this would create, this is unnecessary and a misapplication of sentencing jurisprudence.[34]

In determining whether an offender is a second or third strike offender, 42 Pa.C.S. § 9718.2(a)(2) states:

> Where the person had at the time of the commission of the current offense previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9799.14 or equivalent crimes under the law of this Commonwealth in effect at the time of the commission of that offense or

---

[34] See generally Meg E. Sawyer, The Prior Convictions Exception: Examining the Continuing Viability of Almendarez-Torres Under Alleyne, 72 Washington and Lee Law Review 409 (2015) (discussing Sixth Amendment jurisprudence and concluding that Almendarez-Torres should be upheld).

equivalent crimes in another jurisdiction, the person shall be sentenced to a term of life imprisonment . . .

Appellant's prior convictions in Pennsylvania under 9799.14 are not subject to a finding of fact, they are incontrovertible legally recognized conclusions.

Alleyne v. United States, 133 S. Ct. 2151, (2013), held that any fact increasing the mandatory minimum sentence, is an "element" and must be submitted to a jury for a finding beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) concluded any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. Though the Court in Alleyne declined to address the issue, they distinguished prior convictions from its holding as a result of Almendarez-Torres v. United States, 523 U.S. 224, 239 (1998) (rejecting the claim that recidivism must be treated as an element of the offense). See Alleyne, 133 S. Ct. at n. 1.

The precise issue is whether prior convictions that statutorily increase a defendant's sentence, constitute an element of the offense that a jury must find beyond a reasonable doubt in the underlying case.

The facts of Alleyne are as follows: a judge made a finding of fact at sentencing beyond a preponderance of the evidence that a gun was "brandished" in the underlying offense, after a jury trial concluded. Alleyne, 133 S. Ct. at 2152. The lesser standard, preponderance of the evidence rather than beyond a reasonable doubt, offends defendants' due process rights; a judge-found fact offends defendants' right to a jury trial. Alleyne, 133 S. Ct. at 2156. The Alleyne holding relates specifically to "facts" that increase the mandatory minimum. Alleyne, 133 S. Ct. at 2157-61. In the case *sub judice*, Appellant contends prior convictions are facts. Prior convictions are not "facts" under the meaning of Alleyne, they are more aptly characterized as legally recognized conclusions. Unlike Alleyne, prior convictions are not subject to a finding of fact prior

23

convictions are incontrovertible legally recognized conclusions already determined beyond a reasonable doubt by a jury; or by the defendant's own waiver and admission via a plea. Footnote one (1) of Alleyne, distinguishes prior convictions as an entirely separate matter not before the Court because Appellant did not raise the issue in the briefs. Alleyne, 133 S.Ct. at n. 1. This infers that the Supreme Court of the United States did not intend for the Alleyne holding to settle the issue at bar, thereby recognizing the issues as distinguishable. In fact, Almendarez-Torres, 523 U.S. at 239 treats prior convictions as sentencing factors, not elements of the crime, thereby allowing for a judge to find beyond a preponderance of the evidence that prior convictions exist.

Appellant's argument fails to appreciate a jury already found him guilty of the prior offenses beyond a reasonable doubt. At the heart of Alleyne, and its progeny, are claims under the due process clause of the Fifth Amendment and the right to a jury trial under the Sixth Amendment. Alleyne, 133 S. Ct. at 2156. Prior convictions result from a defendant's decision to plead (and thereby waive his Fifth and Sixth Amendment rights to a have a jury find the elements beyond a reasonable doubt), or a bench trial (again waiving the Sixth Amendment right to a jury), or through a jury trial. In any event, defendants suffer no constitutional frustration as a prior conviction means they either waived or exercised their Fifth and Sixth Amendment rights. In sum, the conduct triggering a challenge under Alleyne, is not present when an increase in the mandatory minimum sentence comes as a result of a prior conviction.

Turning to the statute, this Court argues the way Section 9799.14 is constructed, Appellant's argument would: (1) require juries to engage in the useless pro forma process of matching the Pennsylvania Code from two prior Pennsylvania convictions with Section 9799.14; and (2) engage in a conclusion of law, not a finding of fact, in determining whether an out of

24

state statute is similar enough to a crime listed under Section 9799.14. Moreover, evidence of prior convictions would be highly prejudicial to a defendant.

There are if all prior strikes are convictions in Pennsylvania, this issue would boil down to whether the Commonwealth produced appropriate documentation. Suggesting the Commonwealth must go through a pro forma process of showing documentation to the jury for their rubber stamp of approval is useless and serves no rational purpose. At best the jury determines the Court Sheet showing Appellant's conviction is, in fact, a conviction, and the crime is listed under Section 9799.14. At worst, the jury makes an error that negates a prior conviction thereby undermining Pennsylvania's legislative branch, and by extension the citizens of Pennsylvania.

If the Court agrees with Appellant's assertion, this also means juries, comprised of lay persons, must make a legal determination as to whether prior out of state convictions fall within any of the listed crimes under Section 9799.14. In this case, Appellant believes it is in this interest of justice to have a jury make conclusions of law – that assertion or any argument that results in such an outcome is preposterous.

To make a jury determine whether prior convictions exist is both unnecessary and invites confusion. To hold otherwise, would charge a jury with understanding and applying legal principals like merger doctrine. Should a jury's determination be contrary to the law, they might find two strikes on a case that should only result in one strike – then the same constitutionally protected rights that suggested this mechanism, would be violated by its application. If a judge determines merger before putting the issue to a jury, under Appellant's theory that would still equate to judicial determination of an element of the offence. In any event, Appellant's argument results in impracticability.

25

Finally, should Appellant prevail on this claim, courts would be required to re-litigate each defendant's criminal history prior to sentencing. A criminal defendant only has a constitutional right to one trial and one appeal, sanctioning a re-litigation of these cases will grind the criminal justice system to a halt for no practical purpose.

On the whole, Appellant's <u>Alleyne</u> argument is fatally flawed in its application of the law, and the practical outcome of its conclusion.

### e. Prior Convictions are not too Remote under the Habitual Offender Statute

Neither the statute, nor the comments, require the court to cap the period of time in which prior convictions may be considered under habitual offender statutes. <u>Cf.</u> <u>United States v. Patterson</u>, 302 F. App'x 79, 81 (3d Cir. 2008) (holding a federal habitual offender statute has no cap on consideration of a defendant's prior convictions for purposes of sentencing). Even if such a cap existed, Appellant committed all of the prior offenses within ten years of each other, if the time in prison is deducted.

### f. Appellant Received Adequate Notice to Respect his Due Process Rights

The notice requirement under the statute is constitutional, clear, and respects individuals' due process rights. The fact that the Generally Assembly included a notice requirement shows it was cognizant of defendants' due process rights. <u>See</u> 42 Pa.C.S.A. 9718.2(c). In fact, the Commonwealth's diligence provided Appellant with notice of the third strike mandatory minimum earlier than what's required under the statute. Under the statute a defendant must receive notice of the three strike mandatory minimum after conviction and before sentencing. Appellant was put on notice at 12:55 p.m. on April 12, 2016, and was found guilty on April 13, 2016. N.T. 8/11/16, pp. 47-48. Additional notice beyond what was required under the statute affords Appellant more protection of his due process rights, not less.

## CONCLUSION

For the foregoing reasons, this Court perceives that the present Appeal is meritless. The rulings at the suppression hearing and the sentence was supported by both the law and the record in this case. We respectfully request the Superior Court to affirm.

BY THE COURT:

March 29, 2017

Date

WALLACE H. BATEMAN, JR. J.

*Copies to:*

Niels C. Eriksen, Jr.
174 Middletown Blvd., Ste 300
Langhorne, PA 19047
*Counsel for Appellant*

Matt Weintraub
Office of the District Attorney
Bucks County Justice Center
100 N. Main Street
Doylestown, PA 18901
*Counsel for Appellee*